# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT STEWART, REBECCA HOWARD AND PHILIP MCCALL,<br><br>**Plaintiffs,**<br><br>v.<br><br>FIRST STUDENT, INC.,<br><br>**Defendant.** | CIVIL ACTION<br><br><br><br><br><br>NO.  20-2556 |

## OPINION

This is a multi-state collective and class action brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C.§ 216(b), *inter alia*,[1] in which Plaintiffs allege that Defendant violated FLSA by maintaining scheduling, timekeeping, and compensation policies and practices that enabled it to avoid paying Plaintiffs overtime wages.

## I.    BACKGROUND

Defendant's timekeeping system—Zonar Systems Fleet Management ("Zonar")—only allows Plaintiffs to clock-in and out through the Zonar tracking devices on Defendant's buses. As such, Plaintiffs are not permitted to log any pre-shift work—including receiving bus keys and starting the buses—or post-shift work—including inspecting and cleaning the buses, completing and submitting paperwork, and returning keys.  This allegedly forced Plaintiffs to complete pre-

---

[1] Plaintiffs also alleged claims under Pennsylvania, Ohio, and New Jersey's respective wage laws: Pennsylvania Minimum Wage Act of 1968, 43 PA. STAT. AND CONS. STAT. § 333.101 (West 1968); Pennsylvania Wage Payment and Collection Law, 43 PA. STAT. AND CONS. STAT. § 260.1 (West 1961); Ohio Minimum Fair Wage Standards Act, OHIO REV. CODE ANN. § 4111.01 (West 2007); Ohio Prompt Pay Act, OHIO REV. CODE ANN. § 4113.15 (West 2019); New Jersey Wage and Hour Law, N.J. STAT. ANN. § 34:11-56a (West 1966), N.J. ADMIN. CODE § 12:56-5.1; and New Jersey Wage Payment Law, N.J. STAT. ANN. § 34:11-4.1 (West 1991).

shift and post-shift work without compensation.  Plaintiffs also allege that Defendant failed to adequately pay them for attending mandatory safety meetings, visiting the auto repair shop and post office, and other required appointments.

Pending are competing motions to transfer venue pursuant to 28 U.S.C. § 1404(a).  Both parties agree that the case should be transferred to a federal district court in Ohio—but not on which one.  Defendant seeks to have the matter transferred to the Southern District of Ohio; Plaintiffs request the Northern District of Ohio-Eastern Division (Northern District).

This case was stayed pending the Third Circuit's decision of *Fischer v. Federal Express Corp.*, another FLSA collective action.  *Fischer v. Fed. Express Corp.*, 42 F.4th 366 (3d Cir. 2022).  There the Third Circuit held that FLSA opt-in plaintiffs with no connection to the forum state must either forfeit their claims or seek transfer to "a court that can exercise general personal jurisdiction over their employer."  *Id.* at 388.  Unlike class action plaintiffs—who may represent out-of-state claimants regardless of the latter's connections to the forum state—FLSA opt-in plaintiffs must now satisfy personal jurisdiction requirements as if each were bringing her own claim.  *Id.* at 384.  *Fischer* presented Plaintiffs in this case with two options: (1) abandon all claims for any of the 6,702 opt-in plaintiffs who "cannot demonstrate their claims arise out of or relate to" Defendant's contacts with Pennsylvania; or (2) move to transfer to a federal district court in Ohio, where there would be general personal jurisdiction over the Ohio-based Defendant corporation.  *Id.* at 371.

## II.   ANALYSIS

### A.  Legal Standard

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought. . . ."[2]  The statute requires district courts to adjudicate transfer

motions by performing an individualized, case-by-case assessment of convenience and fairness.

Thus, section 1404(a) transfer motions necessarily call on the district court to balance a number

of case-specific factors.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23 (1988).

When deciding motions to transfer, courts in the Third Circuit consider private and public

interest factors which stretch beyond those enumerated in § 1404(a).  *Jumara v. State Farm Ins.

Co.*, 55 F.3d 873, 879 (3d Cir. 1995).  Private interests include:

> [1] [P]laintiff's forum preference as manifested in the original choice, [2] the defendant's
> preference, [3] whether the claim arose elsewhere, [4] the convenience of the parties as
> indicated by their relative physical and financial condition, [5] the convenience of the
> witnesses—but only to the extent that the witnesses may actually be unavailable for trial
> in one of the fora, and [6] the location of books and records (similarly limited to the
> extent that the files could not be produced in the alternative forum).

*Id.* (citations omitted).  Public interests include:

> [1] [T]he enforceability of the judgment; [2] practical considerations that could make the
> trial easy, expeditious, or inexpensive [judicial economy]; [3] the relative administrative
> difficulty in the two fora resulting from court congestion; [4] the local interest in deciding
> local controversies at home; [5] the public policies of the fora; and [6] the familiarity of
> the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80 (citations omitted).

## B.  Discussion

Venue is proper in judicial districts where: (1) "any defendant resides, if all defendants

are residents of the State in which the district is located"; (2) "a substantial part of the events or

omissions giving rise to the claim occurred"; or (3) "if there is no district in which an action may

---

[2] Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which
the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy
of outright dismissal with transfer.  *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430
(2007) ("For the federal court system, Congress has codified the doctrine. . . ."); *see also* notes following § 1404
(Historical and Revision Notes) (Section 1404(a) "was drafted in accordance with the doctrine of forum non
conveniens, permitting transfer to a more convenient forum, even though the venue is proper.").

otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b).

At least one principal plaintiff and dozens of opt-in plaintiffs live and work in the Northern District of Ohio.  Defendant is headquartered in Cincinnati, Ohio, the Southern District. The alleged FLSA violation—failure to pay overtime wages—occurred both in the Northern District, where Plaintiffs worked, and in the Southern District, where Defendant is headquartered and would have established policies giving rise to the FLSA violation.  Under 28 U.S.C. §§ 1391(b)(1) and (b)(2), venue would therefore be proper in either the Northern District or the Southern District.

### i.    *Private Interest Factors*

Turning to consideration of the *Jumara* factors:  As a preliminary matter, most factors are neutral.  The first factor—plaintiff's forum preference—is neutral.  *Jumara* makes plain that this factor considers "plaintiff's forum preference as manifested in the *original* choice."  *Jumara*, 55 F.3d at 879 (emphasis added).  Plaintiff's forum preference is given significant deference where the defendant—not the plaintiff—moves to transfer.  Where the plaintiffs move to transfer, as here, this factor is neutral.  *Fuller v. Insys Therapeutics, Inc.*, 2018 WL 4275992, at *2 (D.N.J. Sept. 6, 2018) ("Our District modifies this standard . . . when a plaintiff moves to transfer under Section 1404 [the] plaintiff's original choice becomes a neutral factor.").

The second factor—defendant's forum preference—is also neutral.  "Defendant's preference is entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another."  *EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc.*, 379 F. Supp.2d 728, 730 (E.D. Pa. 2005).  Although, here, Plaintiffs first moved to transfer, this factor is still neutral because Defendant also moved to transfer.

4

Similarly, the third factor—whether the claim arose elsewhere—is neutral.  A FLSA claim is considered to have arisen either where the plaintiffs worked (where the challenged policies were effectuated) or from the employer's headquarters (where the employer would have determined and maintained the challenged policies and practices).  *Berndt v. Deloitte & Touche LLP*, 2012 WL 3029767, at *4 (E.D. Pa. July 25, 2012).  Here, the claim would have arisen either in the dozens of states where Plaintiffs, including the 6,702 opt-in plaintiffs, allegedly worked overtime without pay, or in the Southern District of Ohio, where Defendant is headquartered and would have established and maintained policies and practices violative of FLSA.  Because this factor does not clearly favor one district over another, it is neutral.

However, the fourth factor—convenience of parties—weighs slightly in favor of transfer to the Northern District of Ohio.  This factor evaluates the parties' "relative physical and financial condition[s]," *Jumara*, 55 F.3d at 879, including who can "afford more easily the inconveniences associated with travel" to the transferee forum.  *Scanlan*, 366 F. Supp.3d 673, 678 (E.D> Pa. 2019).  It does not consider the convenience of counsel.  *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973).  Plaintiffs "convenience of counsel" argument, *i.e.* that the matter should be transferred to the Northern District merely because that is where both parties' counsel reside and practice, has been rejected by the Third Circuit.  *Id.*  Nonetheless, this factor favors transfer to the Northern District of Ohio on other grounds.  One of the principal plaintiffs, and dozens of opt-in plaintiffs, reside in the Northern District.  Plaintiffs could thus afford more easily the cost of litigating there than in the Southern District, as litigating in the Southern District would necessitate greater transportation and, potentially, lodging costs.  As a sophisticated corporation—indeed, as North America's largest home-to-school transportation provider—Defendant can afford more easily the cost of litigating in the

Northern versus the Southern District.  *Scanlan*, 366 F. Supp.3d at 678 (finding defendant was more easily able to afford travel costs as the "nation's largest domestic airline.").  Because Defendant is in a better financial condition to afford the cost of litigating in the Northern District this factor weighs slightly in favor of Plaintiffs' transfer motion.

The fifth factor—convenience of the witnesses—is neutral.  This factor is considered "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879.  Plaintiffs contend that due to the virtual nature of pre-trial proceedings, any witness would be available to participate in any district.  Defendant claims that most witnesses can litigate their claims in the Southern District of Ohio, but has neither identified these witnesses nor explained why they would be unavailable in the Northern District.  Because neither party has argued that witnesses would be unavailable for trial in either district, this factor is neutral.

The court will not consider the sixth and last private interest factor—location of books and records—as parties make no argument.  Regardless, this factor would be neutral as files can be easily reproduced and provided in electronic format.  *Scanlan*, 366 F. Supp.3d at 678.

Given the above, on balance, the private interest factors weigh slightly in favor of Plaintiffs' motion to transfer to the Northern District of Ohio.

*ii.*    ***Public Interest Factors***

On balance, the public interest factors also weigh in favor of transfer to Plaintiffs' preferred Northern District of Ohio.  The first, fifth, and sixth public interest factors— enforceability of the judgment, public policies, and familiarity of the trial judge with the applicable state law—are rendered neutral when the cause of action at issue arises under federal law, as it does here.  *Scanlan*, 366 F. Supp.3d at 679 ("[F]actors such as the enforceability of the judgment, public policies, and the familiarity of the trial judge with the applicable law are neutral

here because the causes of action at issue arise under federal law.") (citing *Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, 524 F.Supp.2d 628, 633 (W.D. Pa. 2006).

Under the first factor—enforceability of the judgment—a judgment would be equally enforceable in the Northern and Southern Districts of Ohio because Plaintiffs' cause of action arises under FLSA. *Bensalem Lodging Assocs., LLC v. Holiday Hosp. Franchising, LLC*, 575 F. Supp.3d 532, 541 (E.D. Pa. 2021) (rendering this factor neutral because a judgment in the Eastern District of Pennsylvania is "equally enforceable" in the Northern District of Georgia). As to the fifth factor—public policy considerations—neither party has offered arguments that the Northern and Southern Districts of Ohio differ in their policies vis-à-vis the scope and application of FLSA. The sixth factor—the trial judge's familiarity with the applicable state law—is not applicable here because this case concerns federal, not state, law. Accordingly, these three factors are neutral.

The second public interest factor—judicial economy—favors transfer to the Northern District of Ohio. Section 1404(a) was "designed to prevent" the "wastefulness of time, energy and money" that results from "two cases involving precisely the same issues [] simultaneously pending in different District Courts. . . ." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960); *Maxlow v. Leighton*, 325 F. Supp. 913, 916 (E.D. Pa. 1971) (favoring litigation of similar claims in one court "to avoid duplicitous litigation, attendant unnecessary expense and loss of time to courts, witnesses and litigants and to avoid inconsistent results."). In some instances, judicial economy "alone is sufficient to warrant a transfer." *Schiller–Pfeiffer, Inc. v. Country Home Prods., Inc.*, 2004 WL 2755585, at *8 (E.D.Pa. Dec. 1, 2004); *Palagano v. NVIDIA Corp.*, 2015 WL 5025469, at *3 (E.D. Pa. Aug. 25, 2015) (giving this factor considerable weight "even where other *Jumara* factors . . . would suggest the opposite.") (internal quotations omitted).

7

Plaintiffs argue that transfer to the Northern District of Ohio-Eastern Division would promote judicial economy because another FLSA collective action, *Woods v. First Transit, Inc.*, involving similarly situated plaintiffs, common claims, and facts, is already being litigated there *Woods v. First Transit, Inc.*, N.D. Ohio Case No. 21-cv-739-CEF.  Plaintiffs infer one judge could manage both *Woods* and this case, given their similarities, to streamline discovery and adjudication.  Defendant disagrees; it argues the cases involve different plaintiffs, facts, and defendants, such that allowing a single judge to preside over both would not promote judicial economy.

Both this case and *Woods* involve similarly situated plaintiffs, common causes of action, and counsel.  Plaintiffs in this case and in *Woods* are bus drivers of Defendants First Student and First Transit, respectively, and bring similar FLSA claims against the defendants, alleging their failure to pay Plaintiffs, *inter alia*, pre-shift and post-shift wages.  Defendants in both cases are also quite similar.  First Student and First Transit are owned by the same parent company, EQT Infrastructure, share the same address, and have the same individuals serving as Senior Vice President of Maintenance and Senior Vice President of Human Resources and Labor Relations.[3] Lastly, Plaintiffs' lawyers are also litigating *Woods* on behalf of the plaintiffs in that case. Whether or not these similarities would compel a single judge to preside over both cases is for the transferee court to decide.  However, because this case and *Woods* are so alike, it is likely that transferring this case to the Northern District of Ohio would serve judicial economy.  If one judge managed both cases, she could coordinate discovery schedules, rule on common

---

[3] *EQT Infrastructure Closes Acquisition of First Student and First Transit*, FIRST STUDENT (July 22, 2021), https://firststudentinc.com/resources/newsroom/eqt-infrastructure-closes-acquisition-of-first-student-and-first-transit; *Contact First Transit*, FIRST TRANSIT INC, https://www.firsttransit.com/contact-us (last visited Oct. 7, 2022); FIRST STUDENT, https://firststudentinc.com/about-us/leadership (last visited Oct. 7, 2022); *First Transit Leadership Team*, FIRST TRANSIT INC, https://www.firsttransit.com/about-us/team (last visited Oct. 7, 2022).

evidentiary hearings, and familiarize herself with common facts and claims, thereby preventing the very "wastefulness of time, energy and money" § 1404(a) was designed to avoid. *Cont'l Grain Co.*, 364 U.S. at 26; *Lawrence v. Xerox Corp.*, 56 F. Supp.2d 442, 455 (D.N.J. 1999) (granting transfer to another court hearing a pending action involving similarly situated plaintiffs and claims, because adjudicating both cases would allow the judge there to "more effectively and efficiently coordinate the discovery process and litigation. . . ."). Accordingly, this factor weighs in favor of transfer to the Northern District of Ohio.

The third factor—court congestion—also favors transfer to the Northern District. This factor queries whether there is "an appreciable difference in docket congestion between the two districts," *Jumara*, 55 F.3d at 883, and favors the forum with a less congested docket and faster median time from filing to disposition or trial. *Synthes, Inc. v. Knapp*, 978 F. Supp.2d 450, 462 (E.D. Pa. 2013) (finding this factor favored transfer because the transferee forum had at least half the number of cases on its docket); *Scanlan*, 366 F. Supp.3d at 679 (finding this factor favored the forum with the "slightly faster median time from filing to disposition and from filing to trial.").

As of June 30, 2022, the Northern District's pending civil case docket (6,940) was a fraction of that of the Southern District (21,234). The Northern District also had fewer pending cases per active judgeship (631 versus 2,654) and shorter median times of civil actions to disposition (9.8 months versus 12 months) and trial (36.2 months versus 48 months). The Admin. Off. U.S. Courts, *United States District Courts – National Judicial Caseload Profile* 16-17 (2022), https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf. The considerable difference in docket congestion between the two districts weighs this factor in favor of transfer to the Northern District of Ohio.

The fourth factor—local interest in deciding local controversies—is also neutral. This factor is regularly rendered neutral in class actions—and by extension, collective actions—because the "national nature of the class action does not make this a local controversy." *Alers v. Pennsylvania Higher Educ. Assistance Agency*, 2022 WL 3722085, at *6 (E.D. Pa. Aug. 29, 2022) (internal quotations omitted). This factor is accorded less weight when the competing forums lie within the same state. *Morrison v. Lindsey Lawn & Garden, Inc.*, 2014 WL 831570, at *5 (E.D. Pa. Mar. 4, 2014). Because this collective action involves 6,702 opt-in plaintiffs scattered across the country, it is not exclusively local to any one district, or state for that matter. Defendant asserts that the Southern District of Ohio has an interest in deciding this case because Defendant is headquartered there. However, Defendant does not argue that the Southern District has a *greater* interest in hearing this case than the Northern District does; the latter would be just as interested in a deciding a case implicating a major, Ohio-based corporation. Because this collective action cannot be considered a local controversy anywhere, and the competing forums lie within the same state, this factor is neutral.

### iii.   CONCLUSION

On balance, the *Jumara* factors favor transfer to Plaintiffs' preferred Northern District of Ohio-Eastern Division. The Northern District is more convenient for the dozens of resident plaintiffs to litigate there than in the Southern District, significantly less congested, and already hearing a related case, *Woods*. The only argument in support of Defendant's motion to transfer to the Southern District is that the Southern District would be more convenient for Defendant because it is headquartered there. Because at least one of the private interest factors—convenience of parties—and two of the public interest factors—court congestion and judicial economy—favor transfer to the Northern District, and none strongly favors transfer to the

Southern District, Plaintiffs' Motion to Transfer this matter to the Northern District of Ohio-Eastern Division is granted and Defendant's Motion shall be denied.

An appropriate order follows.

**BY THE COURT:**

**/s/Wendy Beetlestone, J.**

_____

**WENDY BEETLESTONE, J.**